IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **THINKFOOD GROUP LLC,** *et al.,* | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: 8:20-cv-02201-PWG** |
| | * | |
| **TRAVELERS PROPERTY CASUALTY** | * | |
| **COMPANY OF AMERICA,** | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This insurance coverage case involves a restaurant company's claim for coverage under the business's insurance policy for the damages it allegedly sustained as a result of the government-mandated restrictions imposed on restaurants during the COVID-19 pandemic. Currently pending before this Court is the Defendant's Motion to Dismiss, ECF No. 29. I have reviewed the parties' filings[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, Travelers Property Casualty Company of America's Motion to Dismiss is GRANTED, and ThinkFood Group, LLC's amended complaint, ECF No. 22, is DISMISSED.

## BACKGROUND[2]

At the direction of ThinkFood Group, LLC ("TFG"), Plaintiffs operate seventeen restaurants in Maryland, Florida, Nevada, New York, Virginia, and the District of Columbia. Am.

---

[1]     Motion memorandum in support, ECF No. 29-1; Plaintiffs' response in opposition, ECF No. 33; Defendant's reply, ECF No. 34; the Amended Complaint, ECF No. 22, and attachments to Defendant's motion as discussed herein.
[2]     For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiffs alleged in their complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

Compl. ¶¶ 9, 21, 114, ECF No. 22. Nine of these restaurants are located in Washington, D.C., which is where TFG's principal place of business is located. *Id*. at ¶¶ 9, 116. Beginning early January 2020, reports documented an outbreak of coronavirus and that this virus was spreading through human-to-human contact and transmission. *Id*. at ¶ 14. Plaintiffs assert that the coronavirus has been present in each of the counties in which TFG's restaurants are located, although they do not allege that the coronavirus was present in any of their restaurants. *Id*. at ¶¶ 136-137.

As asserted in the Plaintiffs' amended complaint, in March 2020, state and local officials began to implement "population-wide social distancing" in recognition that one of the most substantial "non-pharmaceutical interventions . . . was needed to mitigate the transmission of COVID-19." *Id*. at ¶¶ 17-18. In response, local governments issued a series of orders placing significant limitations on public activities and private gatherings to limit the spread of COVID-19. *Id*. at ¶ 18. Plaintiffs allege that these restrictions "were implemented to lessen the burden on health care services and critical infrastructure in the states." *Id*. at ¶ 20.

Plaintiffs also allege that governmental orders were issued in the jurisdictions where their restaurants were located, which "resulted in the partial or complete closure of" these restaurants. *Id*. at ¶ 21. However, the restaurants were permitted to perform take-out, delivery, and drive-through services under these government orders. Def.'s Mot. Mem. 5, ECF No. 29-1. Plaintiffs assert that the government orders "have caused direct loss of Plaintiffs' insured property in that the restaurants and their equipment, furnishings, and other business personal property have been made unavailable, inoperable, useless, and uninhabitable, and their functionality has been severely reduced if not eliminated." Am. Compl. ¶ 140. Plaintiffs claim that because of the orders' requirements, they made "numerous physical alterations to occupy their premises" including

removing and rearranging furniture, and installing plexiglass, touchless fixtures, and sanitation stations. *Id*. at ¶ 145.

Because of the losses suffered by TFG due to the COVID-19 pandemic, Plaintiffs filed an insurance claim with Travelers Property Casualty Company of America ("Travelers"), which was denied based on TFG's claims not being covered by the policy. *See id.* at ¶¶ 6, 146.

Plaintiffs allege that the insurance policy issued by Travelers provides coverage for business income losses and extra expenses resulting from the coronavirus pandemic and the orders from governments issued to address the pandemic. In their complaint, Plaintiffs assert three causes of action for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing, all premised on Plaintiffs' theory that a "loss of use" is a "direct physical loss of … property." *Id*. at ¶¶ 147-174.

Additionally, Plaintiffs assert that the policy's Virus Exclusion does not apply because of statements given by the Insurance Services Office to State insurance regulators, and based on "information and belief . . . that the history of this provision demonstrates that it was not approved by regulators as a bar to coverage arising from public health counter-measures like the" above-described orders. *Id*. at ¶ 123.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). Here, I have considered excerpts from the insurance policy at issue that was attached to Defendant's motion. The insurance policy is integral to the complaint, and the authenticity of the excerpts provided are not disputed.

Additionally, public documents such as orders that were issued by State and local governments attached to the dismissal motion can be properly considered because they are

referenced in and relied upon in the Amended Complaint.  *See* Exs. B-M, ECF Nos. 29-4 – 29-15;

Resp. 14, n. 71.  They are also proper subjects for judicial notice under Fed. R. Evid. 201(b), (d),

and I have taken judicial notice of the referenced orders.

## DISCUSSION

## I.      Standard for interpreting the insurance policy under Washington D.C. law[3]

Courts in Washington, D.C. have recognized that insurance policies are to be construed

according to principles of contract interpretation because an insurance policy constitutes a contract.

*Sec. Title Guarantee Corp. of Balt. v. 915 Decatur St NW, LLC*, 427 F. Supp. 3d 1, 9 (D.D.C.

2019) (quoting *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002). Under

Washington D.C. law, courts give the words used in an insurance contract "their common,

ordinary, and . . . popular meaning." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1172 (D.C.

Cir. 2003) (quoting *Quadrangle Dev. Corp. v. Hartford Ins. Co.*, 645 A.2d 1074, 1075 (D.C.

1994)). In determining the scope of an insurance contract, courts need to look to "the written

language embodying the terms of the agreement." *Dun v. Transamerica Premier Life Ins. Co.*, 442

F. Supp. 3d 229, 238 (D.D.C. 2020) (quoting *Hedgeye Risk Mgmt., LLC v. Heldman*, 196 F. Supp.

3d 40, 47 (D.D.C.  2016)). A court may not allow forced constructions to create an obligation

against the insurer.  *Id.*  And courts "should not seek out ambiguity where none exists." *Athridge*,

351 F.3d at 1172 (quoting *Medical Serv. of Dist. of Columbia v. Llewellyn*, 208 A.2d 734, 736

(D.C. 1965)).

However, if ambiguities exist in an insurance policy, then the policy is interpreted against

the insurer who drafted it, and in favor of "the reasonable expectations of the purchaser of the

policy." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001).

---

[3]      The parties both rely on District of Columbia law to support their positions.  *See* Def.'s Mot. Mem. 6, n.5;
Resp. 7.  Therefore, I shall apply D.C. law.

**II.     The Insurance Policy covers only physical loss or physical damage to property**

Travelers asserts that "[t]he Business Income coverage applies only where a Covered Cause of Loss (such as a fire) causes direct physical loss of or damage to property at the insured premises, and that in turn causes a necessary suspension of the insured's business operations." Def.'s Mot. Mem. 7. The policy provides that Travelers "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'" if the "suspension" is "caused by *direct physical loss of or damage to property at*" described premises. *Id.* (quoting Policy Excerpts 68, Ex. A, ECF No. 29-3 (emphasis added)).

Here, Plaintiffs' complaint does not allege that any "direct physical loss of or damage to property" occurred at their restaurants, or at any "dependent property." Plaintiffs do not allege that any of their property was physically lost or physically damaged. Additionally, Plaintiffs do not identify any lost or damaged property that needs to be repaired or replaced. There are no facts alleged demonstrating that any of Plaintiffs' property was physically harmed in any respect or requires repair or replacement at any of their restaurants.

Plaintiffs' primary argument is that their "loss of use" of their property is a "direct physical loss" of property. Am. Compl. at ¶¶ 150-53, 161. Plaintiffs allege that they suffered "direct loss of [their] insured property" because the restaurants have "been made unavailable, inoperable, useless, and uninhabitable, and their functionality has been severely reduced if not eliminated." *Id*. ¶ 140. However, this very argument has been soundly rejected by courts around the country. Well before the coronavirus pandemic, courts have held that property insurance policies do not cover purely economic losses caused by a loss of use of property that had not itself been physically lost or damaged. *See, e.g., Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. Ct. App. 1997) (finding no "physical loss" sufficient to trigger business interruption

coverage where customers could not access car dealership due to heavy snowstorm); *Pentair, Inc. v. American Guar. & Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005); *Northeast Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.*, CIVIL ACTION NO. 2:12-cv-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014); *J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, CIVIL ACTION NO. 3:06cv00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007).

"[N]early every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property." *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 179 (S.D.N.Y. 2020) (citing cases). These courts have reasoned that "[l]osing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'" *Id.* at 176; *see also Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200 (D. Kan. 2020) ("[T]he overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself.").[4]

In its motion, Travelers correctly relies heavily on *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B., 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020), appeal pending, No. 20-CV-0535 (D.C.).   In *Rose's 1*, the District of Columbia Superior Court rejected the same arguments raised by Plaintiffs in this case, holding that there was no "direct physical loss" caused by the governmental orders limiting restaurant operations cited by Plaintiffs because the orders "did not effect any direct changes to the properties," and "did not have any effect on the material

---

[4]        I note that Plaintiffs have cited authority from other courts, which they argue supports their position. However, the cited cases are not binding on me, and I find that in light of the overwhelmingly greater numbers and better-reasoned cases cited by the Defendant, Plaintiffs' cited cases are outliers and are not persuasive.

or tangible structure of the insured properties." *Id.* at *2-3; Def.'s Mot. Mem. 10-11. The court noted that under dictionary definitions of the terms used in the policy, any loss "must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property. Mayor Bowser's orders were not such a direct physical intrusion." *Rose's 1*, 2020 WL 4589206 at *2-3.

Here, just like *Rose's 1*, Plaintiffs have not alleged that any of their property was physically lost or damaged, and thus have not established an entitlement to coverage. Plaintiffs allege that because of the governmental orders, "Plaintiffs lost the use of their business property and lost substantial business income as a result of the loss of the use of their business property." Am. Compl. ¶¶ 152, 161. Plaintiffs add that the governmental orders "restricted the use" of the restaurants. *Id.* at ¶ 142. Plaintiffs have pleaded impairment to economically valuable use of property, but that does not satisfy the direct physical loss requirement. *See, e.g., Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, 515 F. Supp. 3d 1218, 1223-24 (M.D. Fla. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186, 199-200 (N.D. Ohio 2020); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 907-09 (W.D. Tex. 2021); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 508 F. Supp. 3d 575, 581-82 (N.D. Cal. 2020).

Plaintiffs also argue that direct physical loss or damage to property occurred by referencing statistics about the prevalence of the coronavirus near the restaurants' locations and the rate of community spread. Am. Compl. ¶¶ 136-37. However, Plaintiffs do not make any attempt to allege any facts from these statistics that could establish that the coronavirus caused any physical harm or "tangible injury" of any kind to any property. *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 497 F. Supp. 3d 1203, 1211-12 (S.D. Ala. 2020). Courts have continually rejected theories about the risk or likelihood of the presence of the coronavirus at the insured premises. *See, e.g., Karmel Davis &*

8

*Assoc. v. Hartford Fin. Servs. Group*, 515 F. Supp. 3d 1351, 1357 (N.D. Ga. 2021) ("[T]he 'likely' presence of COVID-19 cannot be regarded as a physical change"; finding "mere blanket allegations . . . are too generalized to support the conclusion that COVID-19 caused physical damage"); *Protégé Rest. Partners LLC vs. Sentinel Ins. Co.*, 517 F. Supp. 3d 981, 989 (N.D. Cal. 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 624-26 (E.D. Pa. 2020). Additionally, the policy requires that the suspension of operations must be caused by the direct physical loss of or damage to property. Plaintiffs allege that it was the government's orders, not the alleged statistical possibility of the presence of the coronavirus, that caused their suspension of operations. Am. Compl. ¶ 139.

Plaintiffs also argue that direct physical loss of or damage to property occurred by alleging that they made "numerous physical alterations," including re-configuring the restaurants' layouts, installing plexiglass, and installing "sanitation stations." Am. Compl. ¶ 145. However, Plaintiffs do not put forth any facts demonstrating how that could satisfy the "direct physical loss of or damage to property" requirement. *See Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, 513 F. Supp. 3d 525, 534-35 (E.D. Pa. 2021) (no direct physical loss where insured restaurant made nearly identical allegations because "none of those activities can reasonably be described as repairing, rebuilding, or replacing"); *Zagafen Bala, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 581, 589 (E.D. Pa. 2021); *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1181-82 (S.D. Fla. 2021).

## III.    Civil Authority Coverage

Under the Civil Authority provision, Plaintiffs' actual loss of Business Income and Extra Expense are covered when the following conditions are satisfied: (1) "[A] Covered Cause of Loss causes damage to property other than property at the described premises" within 100 miles of the

restaurants; and (2) the civil authority action "prohibits access to the described premises" and the surrounding area "as a result of the damage[.]" Policy Excerpts 69-70.

### A.      Prohibited Access

Plaintiffs' allegations fail to satisfy the requirement for Civil Authority coverage that there must be "action of civil authority that prohibits access to the described premises" and the surrounding area. *Id.* at 69. Courts interpreting similar civil authority provisions have continued to hold that the phrase "prohibit access" means to "formally forbid" or "prevent" any access to the premises. *See, e.g., S. Hosp., Inc. v. Zurich Am. Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004); *730 Bienville Partners, Ltd. v. Assur. Co. of Am.*, 67 F. App'x 248, 2003 WL 21145725, at *2 (5th Cir. 2003) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command[.]'"). In the coronavirus context, courts have dismissed claims where access to the insured premises was not prohibited. *See, e.g., Clear Hearing Solutions, LLC v. Cont'l Cas. Co.*, 513 F. Supp. 3d 566, 578 (E.D. Pa.  2021); *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F. Supp. 3d 623, 632 (W.D. Pa. 2021) (holding that limitation on access was insufficient).

Here, Plaintiffs do not plead any facts demonstrating that the governmental orders prohibited or prevented access to the insured premises and the surrounding area, as the policy requires. Rather, the government orders allowed the restaurants to conduct take-out and delivery services. Am. Compl. ¶¶ 24, 52, 68, 82. Courts have repeatedly held in coronavirus-related decisions that when restaurants were permitted to perform takeout and delivery services, such as Plaintiffs in this case, Civil Authority coverage was inapplicable because there was no prohibition of access. *See e.g., Rococo Steak*, 515 F. Supp. 3d at 1225; *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 513 F. Supp. 3d 536, 546 (E.D. Pa. 2021); *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, CIVIL ACTION NO. 2:20-cv-00414, 2021 WL 42050, at *5 (S.D.W. Va. Jan. 5, 2021); *Santo's*

*Italian Café*, 508 F. Supp. 3d at 203; *First Watch Rest., Inc. v. Zurich Am. Ins. Co.*, Case No. 8:20-cv-2374-VMC-TGW, 2021 WL 390945, at *4 (M.D. Fla. Feb. 4, 2021).

### B.     The Government Orders

Plaintiffs' also fail to allege facts sufficient to establish that a "Covered Cause of Loss cause[d] damage to property other than property at the described premises" and that the civil authority action was taken as "a result of the damage" and "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." Policy Excerpts 69-70. Courts have continually held that similar policy provisions require "a causal link between prior damage and civil authority action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011); *see also Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, CIVIL ACTION NO: 09-6057 SECTION: "A" (4), 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010).

Recent coronavirus-related decisions have repeatedly dismissed claims for civil authority coverage because the government closure orders were issued for public health reasons, and the plaintiffs failed to allege any direct physical loss of or damage to non-insured property that gave rise to the civil authority action. *See Michael Cetta*, 506 F. Supp. 3d at 183 ("Without specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face as to [the plaintiff's] entitlement to civil authority coverage."); *see also Santo's Italian Café*, 508 F. Supp. 3d at 203; *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 507 F. Supp. 3d 482, 488-89 (S.D.N.Y. 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 843-44 (N.D. Cal. 2020).

Here, Plaintiffs expressly allege that the governmental orders were issued for public health reasons, not because of direct physical loss of or damage to property. In particular, Plaintiffs assert

11

that the governmental orders "were implemented to lessen the burden on health care services and critical infrastructure," and the orders were issued "to limit the spread of COVID-19." Am. Compl. ¶¶ 18, 20. Plaintiffs allege that "[t]he impact of the Orders is felt not simply" with respect to their restaurants "but also in their application to the businesses and properties adjacent to [their restaurants]." *Id.* at ¶ 140. But the plain language of the Civil Authority provision requires that a Covered Cause of Loss result in direct physical loss of or damage to property, resulting in the civil authority action. The civil authority action cannot alone be the cause of the Covered Cause of Loss. *See, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 908 (N.D. Cal. 2020). Moreover, the complaint does not reference any specific building other than the Plaintiffs' restaurants, nor does it discuss any direct physical loss of or damage to any non-insured property.

## IV.    Virus Exclusion

As a prerequisite to coverage, all of the policy provisions under which Plaintiffs seek coverage require, "direct physical loss of or damage to property," either at the restaurants or at a noninsured location (as specified in the pertinent provision), that is "caused by or result[ing] from a Covered Cause of Loss." Policy Excerpts 68-70. The term "Covered Cause of Loss" is defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded[.]" *Id.* at 69. The Virus Exclusion provides that Travelers "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease." *Id.* at 49-50. Throughout their complaint, Plaintiffs repeatedly refer to the coronavirus and the related governmental orders as the cause of Plaintiffs' claimed losses. Am. Compl. ¶¶ 129, 152, 161. Plaintiffs allege that the orders were issued to "limit the spread of COVID-19" and to "lessen the burden on health care services and critical infrastructure." *Id.* at ¶¶ 18, 20. Plaintiffs repeatedly

refer to "COVID-19" and the orders as the cause of the alleged "direct physical loss" and as the cause of the losses being claimed. *Id*. at ¶¶ 21, 129, 139-140, 142, 152, 161. However, a virus is not a Covered Cause of Loss, and therefore, it does not give rise to coverage under any of the provisions at issue.

"Federal courts interpreting virtually identical Virus Exclusions have nearly unanimously determined that these exclusions bar coverage." *Riverwalk Seafood Grill, Inc. v. Travelers Cas. Ins. Co. of Am.*, 20 C 3768, 2021 WL 81659, at *3 (N.D. Ill. Jan. 7, 2021) (quoting *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 80 (D.N.J. 2020)). This body of caselaw consists of numerous decisions granting motions to dismiss filed by Travelers or its affiliates that involve the same or a similar Virus Exclusion as at issue here. *See Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co.*, 492 F. Supp. 3d 1051 (C.D. Cal. 2020) (granting a motion to dismiss filed by an affiliate of Travelers, because the virus exclusion "precludes all coverage" where the plaintiff restaurant alleged business income losses resulting from governmental restrictions on restaurant operations during the Coronavirus pandemic). Other courts have followed suit and held that similar virus exclusions preclude coverage for losses alleged to have resulted from coronavirus-related government orders. *See Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 510 F. Supp. 3d 1116, 1122, 1125 (M.D. Fla. 2021); *N&S Rest. LLC*, 499 F. Supp. 3d at 79. Plaintiffs allege that their losses were caused by the government orders issued to mitigate the spread of the coronavirus rather than by the virus itself. Am. Compl. ¶ 124. However, courts have found this argument to be unpersuasive. *Franklin EWC*, 488 F. Supp. 3d at 906-07.

The Virus Exclusion and Ordinance or Law exclusion both include an anti-concurrent-causation clause, providing that loss caused "directly or indirectly" by a virus or ordinance or law "is excluded regardless of any other cause or event that contributes concurrently or in any sequence

to the loss or damage." Policy Excerpts 47, 49. This anti-concurrent-causation clause makes other causes irrelevant where the loss is caused, at least in part, by an excluded cause of loss. *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001); *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 971 (D.C. 1999); *see also, e.g.*, *Riverwalk*, 2021 WL 81659, at *3.

Plaintiffs' argument invoking the doctrine of regulatory estoppel to read the Virus Exclusion out of the Policy fails as well. Plaintiffs reference statements allegedly made by the Insurance Services Office to State insurance regulators in 2006. Am. Compl. at ¶ 123. Plaintiffs allege that the Virus Exclusion "was not approved by regulators as a bar to coverage arising from public health countermeasures," and that "[a]ccording to the Insurance Services Office, the virus exclusion was not added to restrict coverage but to clarify that viruses, as a type of pollutant, were already excluded under an existing pollution exclusion." *Id*.

However, courts across the country have rejected application of the regulatory estoppel doctrine and attempts to rely on extrinsic statements in interpreting unambiguous contract language. *See, e.g., Indep. Barbershop LLC v. Twin City Fire Ins. Co.*, 499 F. Supp. 3d 331, 336 (W.D. Tex. 2020) (rejecting regulatory estoppel claim in coronavirus case because there was no basis under state law for applying doctrine); *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*, 509 F. Supp. 3d 1032, 1040 (M.D. Tenn. 2020); *Stanford Dental, PLLC v. Hanover Ins. Group, Inc.*, 518 F. Supp. 3d 989, 1001 (E.D. Mich. 2021). Washington D.C. law does not allow the consideration of extrinsic evidence where insurance policy language is unambiguous. *See e.g., Hubb v. State Farm Mut. Auto. Ins. Co.*, 85 A.3d 836, 839 (D.C. 2014). Therefore, Plaintiffs' regulatory estoppel argument fails.

## V.      Declaratory Judgment Claim

Plaintiffs have not plausibly pleaded a claim for declaratory judgment because, as explained above, Plaintiffs are not entitled to the coverages of the policy. The declaratory judgment claim will be dismissed as duplicative of the breach of contract claim. The declaratory judgment sought is that there is coverage in the policy for the losses claim by Plaintiffs. Am. Compl. at ¶¶ 147-56. Thus, the declaratory judgment claim has no grounding separate and apart from the breach of contract claim, which does not state a claim on which relief can be granted.

## VI.     Implied Covenant of Good Faith and Fair Dealing

The D.C. Court of Appeals "has specifically declined to recognize a tort for 'bad faith by insurance companies in the handling of policy claims,' including 'failure to conduct good faith investigation of [the] insured's claims.'" *Tolson v. Hartford Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 27, 40 (D.D.C. 2017). Although a plaintiff may allege a breach of the covenant of good faith and fair dealing as part of a cause of action for breach of contract, here, Plaintiffs have pleaded their claim as a separate count. When pleaded as part of a breach of contract, such a theory requires plausible allegations that the defendant has "evade[d] the spirit of the contract, willfully render[ed] imperfect performance, or interfere[d] with performance by the other party." *Id.* at 39 (citation omitted). Here, Plaintiffs' claim fails because coverage is properly denied as explained above.

### CONCLUSION

In sum, Plaintiffs have failed to state a claim that the insurance policy grants coverage. In particular, there is no "direct physical loss of or damage to property" at insured premises; no fact alleged by Plaintiff established the requirements for Civil Authority coverage; and the alleged loss and damage was not caused by a covered loss, as required by the policy.  Therefore, Defendant's

Motion to Dismiss is GRANTED. The dismissal will be with prejudice because amendment would be futile.

## ORDER

For the foregoing reasons, it is this 30th day of September 2021, by the United States District Court for the District of Maryland, hereby ORDERED that:

1.      Defendant's Motion to Dismiss, ECF No. 29, is GRANTED;

2.      Plaintiff's Amended Complaint, ECF No. 22, is DISMISSED with prejudice; and

3.      The Clerk is directed to CLOSE THIS CASE.


_____/S/_____
Paul W. Grimm
United States District Judge